# EXHIBIT 1

## TO DECLARATION OF C. MILLER IN SUPPORT OF NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**Law Offices of Kirk D. Hanson**
2790 Truxtun Rd., Suite 140
San Diego, CA 92106
Tel (619) 523-1992
Fax (619) 523-9002

*[handwritten: Mslog has a copy too / Received 9/1/10 / Regular mail]*

August 27, 2010

Malory Burns, Esq.
Sears Holding Corp.
3333 Beverly Road
D/766X, B6-322B
Hoffman Estates, IL 60179

Catherine Miller
Sears Holding Corp.
3333 Beverly Road
D/766X, B6-322B
Hoffman Estates, IL 60179

*Privileged Settlement Communication*

RE: Anthony Nigro v. Sears Holding Corp.

Dear Ms. Burns and Ms. Miller:

As you will recall, I represent Anthony Nigro with respect to his employment law claims against Sears Holdings, Corp. ("Sears"). Although we finalized the settlement of Mr. Nigro's wage/hour claims back in April of 2010, we have not resolved his disability discrimination/wrongful termination claims because Sears was unwilling to settle these claims in conjunction with the wage claims. By way of this letter and demand, we hope to resolve the discrimination/wrongful termination claims pursued under California's Fair Employment & Housing Act ("FEHA").

## I. FACTUAL BACKGROUND

Mr. Nigro suffers from the serious health condition known as Ulcerative Colitis. He worked as a Quality Maintenance Technician 2 at the Sears store in Carlsbad, California, from May 20, 2007, until he was wrongfully terminated effective August 5, 2009.

During the time the Carlsbad store was supervised by Store Manager Tayha Hostetler and Operations Manager Jason Foss, Mr. Nigro's various requests for accommodations were considered by Hostetler and Foss, and granted. The accommodations took the form of changing Mr. Nigro's shift start time from 6:00 a.m. to 9:00 a.m. and giving him time off from work to go to doctor appointments and time off from work if his medical condition worsened. These were reasonable accommodations that worked. However, beginning in early 2008, and continuing up to the date of Mr. Nigro's termination, Mr. Nigro's requests for accommodation were systematically denied or ignored, despite Mr. Foss's and Ms. Hostetler's recommendations that he be accommodated.

The following is a brief chronology of Sears' failure to accommodate Mr. Nigro's serious health condition:

- **Early 2008**- Mr. Nigro asks Tayha Hostetler if he can be transferred to a position with less physical labor which will make his medical condition easier to control. Ms. Hostetler suggests the position of "Warehouse Lead," which involves less physical labor because Mr. Nigro would have been part of a team of 6 people. Ms. Hostetler tells Mr. Nigro that she will seek approval for this transfer from District Manager Chris Adams, and Mr. Adams simply denies the request without any interaction or conversation with Mr. Nigro.

- **December 2008-** An Assistant Manager position opens up in the Automotive Department. Mr. Nigro interviews for the position and gets the job. Immediately upon starting this position, Bill Daily, Manager of the Automotive Department, starts harassing Mr. Nigro about his medical condition. For example, Mr. Daily tells Mr. Nigro that he should not be in this position because of his medical condition, that he was not Daily's first choice and that he did not deserve to be there. This harassment was continuing and unrelenting. Mr. Nigro complained to Jason Foss about the harassment and Foss told Nigro he would try to help. However, Mr. Foss could do nothing as he was not the supervisor of Bill Daily and his hands were tied as a result of the decision by District Manager Chris Adams to ignore Mr. Nigro's requests for help. The harassment was so severe that after only two weeks in the position of Assistant Manager, Mr. Nigro self-demoted himself back to Quality Maintenance Technician 2, and then went out on medical leave.

- **December 2008-** Tayha Hostetler is replaced with new Store Manager Larry Foerster. After this change, all of Mr. Nigro's accommodation requests were required to go through Larry Foerster, HR Manager Genevieve Petty, and District Manager Chris Adams. Jason Foss, who was Mr. Nigro's supervisor, was then cut out from all decisions concerning Mr. Nigro, including requests by Nigro for accommodation. Mr. Foss was then eventually transferred to another store altogether. At this point in time, all of Nigro's requests for accommodation in the form of starting his shift at 9:00 a.m. instead of 6:00 a.m. and requests for time off from work when his medical condition worsened or to go to doctor appointments, were denied by Foerster, Petty and Adams, without any interaction with Nigro, and despite the fact that Foss and Hostetler had routinely granted these requests in the past. Mr. Foss was also informed that the Loss Prevention Department had been instructed to watch every move of Nigro so that they could come up with a reason to fire him. Roy Anguiano was told directly by the Loss Prevention Manager that Mr. Nigro was being watched on video and Mr. Anguiano overheard a conversation between the Loss Prevention Manager and Forester that Nigro was to be fired.

- **Mid May 2009-** Mr. Nigro makes a request for accommodation to Jason Foss to change his shift start time from 6:00 a.m. to 9:00 a.m. Foss takes the request to Larry Foerster, who denies it without any input from or interaction with Nigro. Mr. Nigro was repeatedly asked to do work outside his job scope by Forester. Mr. Nigro brought this to the attention of District Facility Manager Alan Kamisugi, but no action was taken.

- **Mid May 2009-** The position of "Tool Lead" opens up in the Oceanside store, which is mainly a sales position with no physical labor. Mr. Nigro asks Jason Foss for this position as an accommodation for his medical condition. Mr. Foss takes the request to Larry Foerster, who denies it without any interaction with Mr. Nigro.

- **End of May 2009-** Mr. Nigro tells District Facility Manager Alan Kamisugi (who is superior to Larry Foerster in rank) that his medical condition is causing him too many problems to be able to handle the intense physical labor involved with the Quality Maintenance Technician 2 position. Nigro asks Kamisugi for an accommodation in the form of a transfer out of the store into the Field Technician Maintenance position, which involves less physical labor than the in-store position. Kamisugi ignores this request without any further interaction with Mr. Nigro.

- **June 8, 2009-** Mr. Nigro requests time off from work as an accommodation for his worsening medical condition. Mr. Nigro spoke to Jason Foss during the week of June 8th 2009, and requested time off as an accommodation for his medical condition, which request was approved by Foss. Mr. Nigro also contacted Larry Foerster on June 18, 2009, to advise him of the status of his medical leave and that he would bring in a doctor's medical certification as soon as he was physically able to do so. Foerster replied that "this is not helping you at all." Thereafter, Mr. Nigro called into

Sears once a week to advise of his medical condition and leave status, and also left messages regarding same, and spoke to Roy Anguiano and Lupe in the HUB office to make sure his calls were being logged. However, Nigro was informed that, contrary to Sears' policy, not all of his calls had been logged.

- **July 23, 2009**- While on approved medical leave, Mr. Nigro receives a letter from Larry Foerster claiming that Sears had not heard from Nigro since June 29, 2009, that Nigro had failed to provide Sears with a doctor's note concerning his need for medical leave, and that he would be terminated within two days if he did not contact Sears. This letter was false as Mr. Nigro had contacted Sears on a regular basis after beginning medical leave the week of June 8th, and also provided the requested medical certification the same day he received the letter from Foerster. In fact, Mr. Nigro's position was filled on July 12, 2009, before he even returned from his leave and before he was terminated.

- **August 5, 2009**- Mr. Nigro is wrongfully terminated for job abandonment.

- **February 9, 2010** – After a hearing before the California Unemployment Insurance Appeals Board, at which hearing Genevieve Petty testified on behalf of Sears, Administrative Law Judge James G. Queenan held in a written decision that Mr. Nigro *had not* abandoned his job. In fact, Judge Queenan held that Mr. Nigro responded to the July 23, 2009, letter from Larry Foerster by providing Sears with a doctor's certificate justifying his continuing medical absence, and did so on July 23, 2009.

## II. LIABILITY & DAMAGES

Based upon the facts in this case, Sears is liable to Mr. Nigro for two separate and distinct legal violations: (1) failure to accommodate and/or engage in the interactive process; and (2) wrongful termination.

### A. Failure To Accommodate/ Failure To Engage In Interactive Process

California Government Code § 12940 (n) requires that an employer "engage in a timely, good faith, interactive process with the employee… to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee…with a known physical or mental disability or known medical condition." An employer's failure to engage in the interactive process required by § 12940(n) gives rise to liability under FEHA. Claudio v. Regents of University of California (2005) 134 Cal App. 4th 224, 243. In fact, an employer is liable for a failure to accommodate an employee's medical condition on a single occasion despite a pattern of previous successful accommodations. A.M. v. Albertsons, LLC, 2009 DJDAR 14865 (9/18/09).

The interactive process contemplates that the employee and employer will communicate directly with each other to exchange information about job skills and job openings. Claudio at p. 247. That an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under § 12940 (n) if the employer is responsible for a later breakdown in the interactive process. Nadaf-Rahrov v. Neiman Marcus Group, Inc. (2008) 166 Cal App. 4th 952, 986. Although the employee has the obligation to initiate the interactive process, no magic words are necessary, and the employer's obligation arises once the employer becomes aware of the need to consider an accommodation. Gelfo v. Lockheed Martin Corp. (2006) 140 Cal. App. 4th 34, 62, fn.22.

Mr. Nigro's requests for accommodation in the form of job transfers to Warehouse Lead, Tool Lead and Field Technician Maintenance, were either denied or completely ignored by Sears without any interactive process by Sears to explore these options or other alternatives. Additionally, Sears ensured the

accommodation involving the job transfer to Assistant Manager of the Automotive Department would be unsuccessful by failing to stop the harassment of Nigro by the supervisor of the department. Likewise, Mr. Nigro's requests for a 9:00am start time and time off for doctor appointments and time off when his medical condition worsened, were also denied by Sears once Store Manager Tayha Hostetler was replaced by Larry Foerster. Again, these requests were denied by Sears without any interactive process on the part of Sears. These denials are particularly troubling in light of the fact that Sears had previously engaged in the interactive process and granted these requests when Ms. Hostetler and Mr. Foss were Mr. Nigro's supervisors. I have interviewed Ms. Hostetler and Mr. Foss on this issue and both have confirmed that these accommodation requests by Mr. Nigro were reasonable, posed no undue hardship on Sears, and worked. There is no explanation for Sears' change on this issue other than an intentional violation of Mr. Nigro's rights under FEHA, as confirmed by Hostetler and Foss. Finally, Mr. Nigro's last request for accommodation, time off from work in June of 2009, resulted in Mr. Nigro's termination effective August 5, 2009, despite the fact that he had kept in contact with Sears concerning his status and provided Sears with the medical certification it requested.

"Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." Gelfo at p. 62, fn. 22. Responsibility for the breakdown here lies solely with Sears. In fact, this case does not present a situation involving a breakdown by Sears in the interactive process, but instead a failure by Sears to even initiate the interactive process in response to Mr. Nigro's numerous requests for accommodation.

### B. Wrongful Termination/ Retaliation

An employer may not discharge an employee or discriminate against an employee in terms, conditions, or privileges of employment because of the medical condition of the employee. Gov. C. §12940 (a).

Here, Sears punished Mr. Nigro for requesting accommodations for his medical condition by refusing accommodations without engaging in the interactive process and by illegally terminating Mr. Nigro at the time he was taking time off from work as an accommodation for his medical condition. Indeed, we know from our interviews of Sear's personnel that the Loss Prevention Department had been instructed to "watch every move" of Mr. Nigro so that Sears could conjure up a reason to fire him.

### III. DEMAND

Based upon the foregoing, Mr. Nigro demands $175,000.00 in exchange for a full release of all his claims, including attorney's fees.

### IV. CONCLUSION

This settlement offer shall remain open for 21 days from the date of this letter. In the meantime, should you have any questions, please feel free to contact me.

Regards,

Kirk D. Hanson