| | |
|---|---|
| 1 | JODY A. LANDRY, Bar No. 125743 |
| 2 | CARYN M. ANDERSON, Bar No. 247038<br>LITTLER MENDELSON, P.C. |
| 3 | 501 W. Broadway, Suite 900<br>San Diego, CA 92101.3577 |
| 4 | Telephone: 619.232.0441<br>Email: jlandry@littler.com |
| 5 | Email: cmanderson@littler.com |
| 6 | Attorneys for Defendant<br>SEARS, ROEBUCK AND CO. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ANTHONY V. NIGRO, | Case No. 11cv1541 MMA (JMA) |
|---|---|
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF CARYN M. ANDERSON IN SUPPORT OF SEARS'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| SEARS, ROEBUCK AND CO., | |
| Defendants | Date: June 18, 2012<br>Time: 2:30 p.m.<br>Judge: Hon. Michael M. Anello<br>Courtroom: 5 |
| | Complaint Filed: May 27, 2011<br>Trial Date: January 8, 2013 |

SUPPL. DECLARATION OF ANDERSON
FIRMWIDE:112274885.1 016144.1316

Case No. 11cv1541 MMA (JMA)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

1  I, Caryn M. Anderson, hereby declare and state as follows:

2  1. I am an attorney at law duly licensed to practice before all of the courts in the State of California. I am an associate in the law firm of Littler Mendelson, A Professional Corporation, which is the attorney of record for Defendant SEARS, ROEBUCK AND CO., ("Sears") in the above-captioned matter. I have personal knowledge of the facts set forth herein and if called as a witness I could and would competently testify thereto and authenticate all documents referenced in this declaration.

2. Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the transcript from the deposition of Robert E. Murad, M.D. taken in this matter on May 15, 2012.

3. Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the transcript from the deposition of Plaintiff Anthony V. Nigro taken in this matter on December 8, 2011.

I declare under penalty of perjury under the laws of the United States of America and of California that the foregoing is true and correct.

Executed this 11 day of June 2012, at San Diego, California.

_____
Caryn M. Anderson

Anthony V. Nigro v. Sears, Roebuck and Co.
Case No. 11CV-1541 MMA (JMA)

Supplemental Declaration of Caryn M. Anderson in Support of Sears Motion
For Summary Judgment

## TABLE OF CONTENTS:

| Exhibit 1 | Excerpts of the deposition transcript of Robert E. Murad, M.D., dated May 15, 2012 | Pages 1-9 |
| Exhibit 2 | Excerpts of the deposition transcript of Anthony Nigro, dated December 8, 2011 | Pages 10-13 |

Anthony V. Nigro v. Sears, Roebuck and Co.
Case No. 11CV-1541 MMA (JMA)

Supplemental Declaration of Caryn M. Anderson in Support of Sears Motion
For Summary Judgment

**EXHIBIT 1**

Page 1

1              UNITED STATES DISTRICT COURT
2              SOUTHERN DISTRICT OF CALIFORNIA
3
4      _____
                                          )
5                                         )      **Certified**
       ANTHONY V. NIGRO,                  )      **Transcript**
6                                         )
               Plaintiff,                 )
7                                         )
       vs.                                )
8                                         ) Case No. 11cv1541 MMA
                                          )          (JMA)
       SEARS, ROEBUCK AND CO.,            )
9                                         )
               Defendants.                )
10                                        )
       _____)
11
12
13           DEPOSITION OF ROBERT E. MURAD, M.D.
                     La Jolla, California
14                     May 15, 2012
                         Volume I
15
16
17
18
19
20
21     Reported By:
       Christine E. Milkovits,
22     CSR NO. 12650
23     Job No. CS394999
24
25     PAGES 1 - 60

```
                                                    Page 6
 1          La Jolla, California, Tuesday, May 15, 2012
 2                         1:24 p.m.
 3
 4                   ROBERT E. MURAD, M.D.,
 5     having been duly sworn, testified as follows:
 6
 7                         EXAMINATION
 8    BY MS. ANDERSON:
 9         Q    Hi, Doctor.  I'm Caryn Anderson.  I represent
10    Sears, the defendant in this matter.
11              Can you state your full name for the record.
12         A    Robert E. Murad, M.D.
13         Q    Thank you.
14              Have you ever had your deposition taken
15    before?
16         A    Yes.
17         Q    How many times?
18         A    Two times.
19         Q    How long ago was the most recent deposition
20    you had?
21         A    Within a year.
22         Q    Are you comfortable proceeding without me
23    reviewing the ground rules for a deposition, or would
24    you like me to go through them?
25         A    I'm comfortable, but you can correct me if I
```

Page 12

1  Anthony Nigro's case?
2      A   Not at all.
3      Q   Have you ever spoken with Anthony Nigro's
4  counsel before?
5      A   I got a message that he wanted to speak to me.
6  That's why I called Tony Cordona, to find out if I
7  should speak to him.  I was told not to.
8      Q   So you didn't, correct?
9      A   I did not.
10     Q   Have you talked to anyone else about this
11 deposition today?
12     A   Yes.
13     Q   Who else?
14     A   Tony Nigro came in a few days ago to be seen
15 as a patient.  I told him we could not talk about it.
16 But it still came up anyway.
17     Q   What did the two of you discuss?
18     A   He told me what the nature of this was about
19 because I didn't really understand it.  Although I kept
20 telling him not to talk about it, it came up anyway.
21     Q   What did he tell you the nature was?
22     A   The nature of what I'm understanding is that
23 he is suing under some disability act that he had a
24 disability and his employer did not meet his needs.
25     Q   Did he tell you anything else about his case?

Page 13

1  A   He said that there was another doctor that was
2  deposed who basically said that his case was not a good
3  case and that if I said his case was not a good case he
4  would lose.
5  Q   Did he tell you anything else?
6  A   I don't think anything -- besides his current
7  problem. We did not discuss it further because I kept
8  trying to avoid the topic. Because I said to him, The
9  first thing you're going to ask me is did we talk about
10 it. So I said, Don't talk about it.
11 Q   Did Anthony Nigro say why he came to see you
12 about his case?
13 A   He said he came to see me because he was
14 having a flare of his colitis.
15 Q   Did he say any other reasons that he came in?
16 A   No.
17 Q   You told me everything that Anthony Nigro told
18 you about?
19 A   I believe so.
20 Q   Was there anybody else that you talked to
21 about this deposition?
22 A   No.
23 Q   So it was just Tony, Anthony Nigro, and that
24 was it?
25 A   Mm-hmm.

1    A    Yes.

2    Q    And those severe symptoms were the diarrhea

3    you mentioned earlier, correct?

4    A    Yes.

5    Q    Were there other symptoms that were severe for

6    him from time to time?

7    A    Abdominal pain.

8    Q    Any others?

9    A    Abdominal pain and bloody stool basically were

10   the symptoms.

11   Q    In your opinion when Anthony Nigro was

12   experiencing one of these flares of his ulcerative

13   colitis, was he able to work in any capacity?

14        MR. HANSON:  Objection.  Vague and ambiguous

15   as to "flares."

16        THE WITNESS:  I would go by what he would tell

17   me.  I couldn't really judge.  It's hard to judge --

18   when someone has pain, you either believe them or you

19   don't.  I chose to believe him.

20   BY MS. ANDERSON:

21   Q    So based on what he was telling you, you

22   concluded he was unable to work in any capacity?

23   A    Right.

24   Q    Would changing his work duties to be less

25   physically demanding make any difference in terms of his

Page 35

1  ability to work?
2      A    It's very hard to say.  And I'm telling you
3  because I know from what he told me three days ago what
4  they're looking for.  And I think that's not an
5  unreasonable thing, which is -- you know, if you're
6  awake all night with a bloody stool, you're going to be
7  tired in the morning.  So I'm looking for -- I can only
8  tell you I agree with that.  But it was never an issue
9  that came up during the time I took care of him.
10     Q    So three days ago when he came to see you, he
11 told you it would be helpful -- it would have helped for
12 him to have a less physically demanding job?
13     A    Yes.
14     Q    But before three days ago when he told you it
15 would be helpful to his case, you hadn't formed that
16 opinion?
17     A    I hadn't thought about it.
18     Q    So when you placed Anthony Nigro off work, he
19 wasn't placed on any kind of limited duty, right?
20     A    Correct.
21     Q    Did you have any reason to think that changing
22 his start time from 6:00 to 9:00 in the morning would
23 have made a difference in his capacity to work?
24     A    Not at the time, no.
25     Q    Are you saying you do now?

1    A    I'm saying it would be reasonable to -- for
2  anyone who was sleeping poorly -- a later start time
3  would be useful to get some rest. And this is --
4  unfortunately, this is an idea that got put in my head
5  that I'm relating because he told me this. But I didn't
6  think of it at that time.
7    Q    So three days ago when he came to see you, did
8  he say it would have been helpful to his case -- it
9  would have helped him to change his start time from 6:00
10 to 9:00?
11   A    He suggested that would be helpful.
12        MR. HANSON: To his case or him working at
13 Sears?
14        MS. ANDERSON: Counsel, you'll get your chance
15 on cross.
16        THE WITNESS: Since she's --
17 BY MS. ANDERSON:
18   Q    We'll take turns.
19        MR. HANSON: I'll stipulate an objection. It
20 wasn't clear to me. It's vague and ambiguous as to what
21 your question is.
22 BY MS. ANDERSON:
23   Q    We'll just start with a new question.
24        Did you have any reason to think at the time
25 that you're treating him before three days ago that you

Page 47

1  A    There are a lot of medical conditions you can
2  measure. And ulcerative colitis I had no way of
3  measuring. I had to go by what he'd say. There's no
4  way to measure pain, and I can't count how many times he
5  really has bowel movements because I'm not there. So I
6  totally had to rely on what he told me.
7  Q    Because there's no medical test you could do
8  to figure out if someone's in pain or how many bowel
9  movements they're having, you have to rely on someone
10 telling you this is happening?
11 A    I believe so. But I'm not an expert. There
12 may be other ways that I wasn't aware of, but I don't
13 think so.
14 Q    When you're treating any patient regardless of
15 the condition, I imagine you ask questions of a patient
16 and find out how they're feeling and would do a physical
17 examination typically, correct?
18 A    Correct.
19 Q    Is that -- getting that information and those
20 physical exams important to you typically in coming up
21 with a diagnosis or treatment plan?
22 A    Yes.
23 Q    You also, I guess, do medical tests, blood
24 tests or something, I suppose, correct?
25 A    Correct.

Page 60

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: 5/18/2012

*Christine E. Milkovits*

CHRISTINE E. MILKOVITS, CSR 12650

Anthony V. Nigro v. Sears, Roebuck and Co.
Case No. 11CV-1541 MMA (JMA)

Supplemental Declaration of Caryn M. Anderson in Support of Sears Motion
For Summary Judgment

**EXHIBIT 2**

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY V. NIGRO,        )
                         )
            Plaintiff,   )
                         )
    vs.                  ) Case No.
                         ) 11-cv-1541 MMA
SEARS, ROBUCK AND CO.,   ) JMA
and DOES 1 through 100,  )
inclusive,               )
                         )
            Defendants.  )
                         )
_____)

**Certified Transcript**

VIDEOTAPED DEPOSITION OF ANTHONY V. NIGRO,
at 501 West Broadway, Suite 900,
San Diego, California, commencing
at 10:05 a.m., Thursday,
December 8, 2011, before
Karla Cazenave Rupp, CSR No. 10384

Job No. CS359880

Veritext Corporate Services

800-567-8658                                973-410-4040

Exhibit 2
Page 10

```
                                                      Page 143
 1    note or anything like that.
 2       Q.   And after Mr. Foss told you that, did you go ask
 3    Mr. Foerster about it?
 4       A.   I didn't speak with him about any doctor's note.
 5    I spoke with him about my pay, and he sent me to speak      01:52:44
 6    with Genevieve.
 7       Q.   Did you speak to Mr. Foerster about your start
 8    time?
 9       A.   No, I did not.
10       Q.   Did you contact Mr. Adams about the start time?    01:52:54
11       A.   No, I did not, because there wouldn't be any
12    reason for me to.
13       Q.   Did you contact 88SEARS about your start time
14    issue?
15       A.   No --
16            THE REPORTER:  I'm sorry, Counsel.  "Did you
17    contact" --
18            MS. LANDRY:  "Did you contact 88SEARS about your
19    start time issue?"
20            It's "88SEARS."                                    01:53:16
21            THE WITNESS:  No, I did not.  I went to the
22    channels in the associate handbook.  I went to my direct
23    supervisor.
24    BY MS. LANDRY:
25       Q.   Did Dr. Murad ever tell you that he believed you   01:53:24
```

Page 144

1  needed a later start time?
2     A.  He -- he had asked me what I -- why I felt -- you
3  know, why I kept having these flare-ups, you know, every
4  two months, six months, four months.
5         And I said I wasn't sure, but as I have gotten           01:53:50
6  older, the physical labor of the -- of that job, or maybe
7  any other job, was causing me to have more flare-ups.
8  And I told him, the only way that it seems to help me is
9  if I go in later, or if I can just completely get out of
10 doing maintenance and maybe get into some other position   01:54:11
11 in the store.
12        And he said, "Do you think that they'll do that?"
13        And I said, "Yes.  They have been the entire time
14 I've been there, up until May of 2009."  And I said, "So
15 I don't have any problems getting any accommodations that  01:54:24
16 I need for a" -- "later start time or taking any time off
17 or going" -- "you know, having to go see him or something
18 like that."
19        I didn't have any issues or problems with it
20 because Jason always accommodated me and there was no --   01:54:40
21 no problems.
22    Q.  Did you still feel that you were able to perform
23 your job duties as a QMT, when you returned to work in
24 May of 2009?
25    A.  Yes.                                                01:54:56

Page 262

1  STATE OF CALIFORNIA)
2  COUNTY OF SAN DIEGO)
3
4        I, Karla Cazenave Rupp, a Certified Shorthand
   Reporter, in and for the State of California, Certificate
5  No. 10384, do hereby certify:
6        That the witness in the foregoing deposition was
   by me first duly sworn to testify to the truth, the whole
7  truth, and nothing but the truth in the foregoing cause;
   that the deposition was then taken before me on Thursday,
8  December 8, 2011, at 501 West Broadway, Suite 900, in the
   City of San Diego, State of California; that said
9  deposition was reported by me in shorthand and then
   transcribed, under my direction, through computer-aided
10 transcription, and the foregoing is a true record of the
   testimony elicited and proceedings had at said
11 deposition.
12        I do further certify that I am a disinterested
   person and am in no way interested in the outcome of this
13 action or connected with or related to any of the parties
   in this action or to their respective counsel.
14
         It was stipulated that the original deposition be
15 delivered to Kirk D. Hanson, Esq., counsel for the
   witness, for the purpose of having the witness read,
16 correct, and sign his deposition under penalty of
   perjury; said original thereafter to be maintained by
17 Kirk D. Hanson, Esq., until the time of trial.
18        IN WITNESS WHEREOF, I have hereunto set
19 my hand on this _____ day of _____ 2011.
20
21
         _____
22       Karla Cazenave Rupp, CSR No. 10384
23
24
25